## 2762. BLACKSHEAR MANUFACTURING COMPANY *v.* STONE.

1. Although the evidence strongly preponderates against the verdict, yet since there is some evidence to support it, this court has no jurisdiction to grant a new trial on the ground that the verdict is contrary to the evidence.

2. Causes of action ex delicto can not, except in some special instances, be set off against a suit proceeding ex contractu. While damages resulting from the plaintiff's breach of a contract sued on may be set off by plea of recoupment. still this right of set-off is not broad enough to include damages alleged to have arisen from the plaintiff's wrongful act in connection with a transaction legally distinct from the contract sued on, even though closely connected with it in point of time.

3. Where a promissory note is payable on a fixed day, and not "on · or about" a fixed date, and the debtor makes payments before the maturity of the note, he is not entitled, in the absence of an agreement to the contrary, to interest on the payments from the time they are made up to the date the note is due.

DECIDED JANUARY 31, 1911.

Complaint; from city court of Baxley—Judge Padgett. May 20, 1910.

*Parker & Highsmith,* for plaintiff.

*W. W. Bennett, Alvin D. Sellers,* for defendant.

POWELL, J. The Blackshear Manufacturing Company sued Stone upon a promissory note for about $3,500, less certain credits which reduced the amount due to some $3,000. Stone set up, in defense, that the note sued on was given in renewal and in novation of a previous indebtedness, represented by notes due by him to the Blackshear Manufacturing Company for fertilizer: that the first notes had been secured by the transfer to the manufacturing company of a number of promissory notes taken by Stone from his customers, and that at the time when the note sued on was given, it was expressly agreed between him and the agent who took the note for the manufacturing company that if he would secure the indebtedness by mortgage, they would surrender to him the customers' notes which they held as collateral, and which were then in his (Stone's) possession for collection; that he executed the note sued on, and executed and delivered the mortgage; that the agent of the manufacturing company then asked him to let him have the notes to take them back to the home office of the company to check them up, promising to return them to Stone; that instead of returning them, the company had converted them to

their own use, and had placed them in the hands of Messrs. Parker
& Highsmith, attorneys, for collection; that the notes were all
solvent and worth their face value; that by reason of the company's
conversion of the notes they had damaged him in a named amount,
—about $1,500.    He further pleaded that certain payments were
made prior to maturity, and that while these sums had been
credited, he should also be allowed eight per cent. interest on
these payments, from the time they were made, up to the ma-
turity of the note.    No agreement to this effect is alleged, but
the matter seems to be pleaded as one of legal right.    The plain-
tiff demurred to these defenses, and the court overruled the de-
murrer.    Exceptions pendente lite were duly preserved, and error
is assigned as to this ruling.    The trial resulted in a verdict in
favor of the plaintiff, for an amount slightly in excess of $1,400,
thus allowing to the defendant a set-off equal to the value of
the notes which he claimed had been turned over to the plaintiff's
agent under the circumstances set out in the pleading.    The plain-
tiff made a motion for a new trial, which was overruled.    Further
facts necessary to an understanding of the points presented will
be hereinafter stated.

1.    To begin with, the verdict is shockingly contrary to the
weight of the evidence.    The transaction alleged by the defendant
is, in the light of all the circumstances, so unusual and so extraor-
dinary, and his claim that all the old guano notes were worth
dollar for dollar is so out of consistency with all the circumstances
of the case, as to make us wonder how the jury adopted any such
theory of the evidence.    If the defendant's claim is true that
the plaintiff, at the time of taking the note and mortgage, was
to surrender to him all the title and interest in the notes of which
he had held possession, it is hard to understand why it should be
necessary for them to be turned back to the plaintiff's agent in
order that they might be checked up.    Under those circumstances,
no checking up would have been necessary.    The defendant had the
notes, and was merely to retain them, irrespective of how many
or how few there were.    Unusual as this may seem, it is still
stranger that after the plaintiff's agent took the notes away and
delivered them over to attorneys for collection, the defendant
should never have made any demand whatever upon the plaintiff
or upon the attorneys for the notes until after suit was brought,

and that notwithstanding several letters passed in which he was urged to assist the attorneys in the collection of the notes, with a view of having the sum so collected applied to his indebtedness, nowhere by any reply did the defendant set up the slightest claim or contention that the notes did not belong to the plaintiff as collateral security, or that they had been held in violation of the agreement by which they had been turned over to the plaintiff's agent. It is hard for us to conceive that the notes were worth their face value (as the jury allowed) when such strenuous steps were being taken to collect them, with only partial success. However, juries have the prerogative of overruling many inconsistencies which seem insurmountable to the minds of judges, vested with no jurisdiction over the facts. So we are not going to reverse the judgment on the ground that the verdict is contrary to the evidence; but there are other reasons why this court should grant a new trial.

2. The trial judge should have sustained the demurrer to the answer. Under the procedure in this State it is not permissible, except in certain special cases, for the defendant to set off a cause of action ex delicto against a suit proceeding ex contractu. Recognizing this general rule, the defendant says that this matter of the conversion of the collaterals amounted to recoupment, and all damages arising from the plaintiff's own breach of the contract may be pleaded in avoidance of the contract. As we see it, the alleged conversion of the collaterals was not a breach of contract on the part of the plaintiff, but was an independent tort. It is true that the surrender of the special title which the plaintiff had in and to the collateral papers was alleged as a part of the consideration for the plaintiff's giving the new note and securing it by a mortgage. But when the note and the mortgage were executed and delivered, and the defendant was in possession of the collaterals, the contemplated legal effect was accomplished, and the title to the collaterals vested absolutely in him. There was nothing else for either party to do in order to make his title complete. If he then or thereafter delivered the collateral papers back to the plaintiff or its agent, this was of necessity an additional transaction. As we have already said, we can not conceive of any ordinary reason for it; but conceding that the parties did go through the form and action of doing the absurd thing, still

this redelivery of the collaterals to the plaintiff, for checking them up, was not one of the things contracted for in the agreement between the parties, nor a thing necessary or regular in the accomplishment of the thing in contemplation of the parties in making the contract. If A should sell B a horse, and B should execute his promissory note in payment thereof, and, after the horse had been delivered to the one party and the note to the other, A should borrow the horse from B to ride back home, and should upon the trip commit a tort upon the horse, B could not set off the tort upon the horse as a recoupment. The two matters, while connected in point of time and somewhat in point of circumstances, would not be connected in point of legal privity. It follows that the court should have struck so much of the plea as alleged this set-off. If the defendant's claim that the plaintiff had converted his notes be true, then he still has a cause of action therefor, but he should assert it in a separate suit.

3. Where a promissory note is payable on a fixed day, and not "on or about" a named date, and the debtor makes payments before the maturity of the note, he is not entitled, in the absence of an agreement to the contrary, to interest on the payments, from the time they are made, up to the date the note is due. As we held that the court should have sustained the demurrer to the defendant's pleas as amended, it is not proper that we should go further and take up the errors assigned upon the charge of the court.

*Judgment reversed.*